UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
AT ASHLAND

**CIVIL ACTION NO. 24-55-DLB**

**GLENN MILLER**                                                                                       **PLAINTIFF**

**v.**                         **MEMORANDUM OPINION & ORDER**

**UNITED STATES OF AMERICA, et al.**                            **DEFENDANTS**

\*\*\* \*\*\* \*\*\* \*\*\*

This matter is pending for consideration of motions to dismiss filed by Defendants Hunt and Boyd (Doc. # 20) and the United States (Doc. # 21). Plaintiff Miller has filed a response to the motions (Doc. # 29) and the defendants have filed replies (Doc. # 30, 31). Having considered the matter, the Court will grant Hunt and Boyd's motion because no *Bivens* claim exists under the facts alleged by Miller. The Court also will grant the United States' motion, in part, because Boyd's alleged conduct falls within the discretionary function exception to the FTCA. However, the Court will deny the United States' motion with respect to the FTCA claim based on Hunt's alleged conduct, which Miller has adequately alleged was performed in the scope of Hunt's employment as a federal corrections officer.

**I.**

Glenn Miller is a federal inmate who was previously housed at the Federal Correctional Institution in Ashland, Kentucky ("FCI Ashland"). Miller alleges that during his confinement at FCI Ashland, he suffered from various medical problems and took the blood thinner Eliquis. (Doc. # 5 at 3). Miller claims that he required a bottom bunk

assignment due to his medical issues. Miller further alleges that despite his medical problems and a Bureau of Prisons (BOP) policy requiring him to have a bottom bunk, Defendant Boyd (a nurse practitioner) denied his request. Miller reports that he fell out of bed on May 17, 2023, and an unknown correctional officer kicked him and told him to get up. He was transported to an outside hospital where he was diagnosed with injuries including a subarachnoid hemorrhage and a nondepressed left temporal bone fracture. *Id.*

Miller was discharged from the hospital and returned to FCI Ashland on or about May 22, 2023. *Id.* at 3-4. Miller claims that Defendant Hunt (a correctional officer) was upset because Miller continued to complain about his bunk assignment. *Id.* at 4. Miller alleges that, on June 6, 2023, Hunt ordered him to get up and make his bed even though Hunt had been instructed to rest. Miller alleges that Hunt "physically grabbed" and "roughly turned him" before yelling at him and threatening to place him in the special housing unit ("SHU").

Miller alleges that Hunt spit in his face after Miller attempted to file an administrative grievance. *Id.* at 4-5. Miller says that Hunt also cursed at him, pushed him against a wall, handcuffed him, and dragged him to the Lieutenant's office. Miller alleges that Hunt ignored his request to walk more slowly and "sent [him] to the [SHU] for doing nothing." *Id.* at 5. Miller alleges that Hunt had "previously targeted" him because of his religion. *Id.* at 4.

Miller filed the instant action on May 13, 2024 (Doc. # 1) but amended his complaint on July 2, 2024 (Doc. # 5). Miller alleges that Boyd and Hunt's actions violated his Eighth Amendment right to be free from cruel and unusual punishment. He seeks monetary

damages from Boyd and Hunt pursuant to *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388 (1971) and from the United States pursuant the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2671 *et seq*.  Boyd and Hunt filed a motion to dismiss for failure to state a claim upon which relief can be granted under Rule 12(b)(6) of the Federal Rules of Civil Procedure.  (Doc. # 20).  The United States seeks dismissal for lack of subject matter jurisdiction pursuant to Rule 12(b)(1).  (Doc. # 21).

II.

A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the sufficiency of the complaint.  To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  However, "a formulaic recitation of a cause of action's elements will not do."  *Twombly*, 550 U.S. at 555.  Courts "must construe the complaint in the light most favorable to the plaintiff and accept all allegations as true."  *Keys v. Humana, Inc.*, 684 F.3d 605, 608 (6th Cir. 2012).

Motions to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) attack jurisdiction either factually or facially.  *L.C. v. United States*, 83 F.4th 534, 542 (6th Cir. 2023).  A factual attack "challenges the factual existence of subject matter jurisdiction."  *Id.* (quoting *Cartwright v. Garner*, 751 F.3d 752, 759 (6th Cir. 2013)).  When considering such an attack, "a court has broad discretion with respect to what evidence to consider in deciding whether subject matter jurisdiction exists, including evidence outside of the

3

pleadings, and has the power to weigh the evidence and determine the effect of that evidence on the court's authority to hear the case." *Id.*

"Where a party contends that the factual allegations of a complaint, even if assumed to be true, fail to establish the court's subject matter jurisdiction over the plaintiff's claims, that party presents a facial attack upon the court's jurisdiction under Federal Rule of Civil Procedure 12(b)(1)." *Am. Telecom Co., LLC v. Republic of Lebanon*, 501 F.3d 534, 537 (6th Cir. 2007); *Gentek Bldg. Prods. v. Sherwin–Williams Co.*, 491 F.3d 320, 330 (6th Cir. 2007). A district court assesses the validity of such a motion using the same approach used to evaluate a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). *Global Technology, Inc. v. Yubei (XinXiang) Power Steering System Co., Ltd.*, 807 F.3d 806, 810 (6th Cir. 2015) (citing *McCormick v. Miami Univ.*, 693 F.3d 654, 658 (6th Cir. 2012)).

### III.

**A.     Hunt and Boyd's motion to dismiss Miller's *Bivens* claims will be granted.**

Constitutional claims for damages against individual federal officers may be pursued (if at all) pursuant to *Bivens v. Six Unknown Named Agents,* 403 U.S. 388 (1971), which holds that an individual may "recover money damages for any injuries he has suffered as a result of [federal] agents' violation of" his constitutional rights. *Sanders v. Sumner*, No. 6:24-CV-055-REW, 2025 WL 1413517, at *3 (E.D. Ky. May 15, 2021) (quoting *Bivens*, 403 U.S. at 397). However, the *Bivens* remedy is judicially created and may be implied only in limited circumstances. *See Ziglar v. Abbasi*, 582 U.S. 120, 131 (2017). Since *Bivens* was decided in 1971, the Supreme Court has found an implied damages action to exist in only three circumstances: (1) where federal officials searched

4

a private residence without probable cause in violation of the Fourth Amendment, *Bivens*, 403 U.S. at 397; (2) where a Congressperson terminated an employee on the basis of gender in violation of the Fifth Amendment, *Davis v. Passman*, 442 U.S. 228, 249 (1979); and (3) where prison officials were deliberately indifferent to a prisoner's serious medical needs in violation of the Eighth Amendment, *Carlson v. Green*, 446 U.S. 14, 24 (1980). *See Ziglar*, 582 U.S. at 131.

Since *Carlson* was decided over 45 years ago, the Supreme Court has "consistently rebuffed requests to add to the claims allowed under *Bivens*." *Hernandez v. Mesa*, 589 U.S. 93, 102 (2020). *See also Correctional Services Corp. v. Malesko*, 534 U.S. 61, 68 (2001) (noting that "[s]ince *Carlson* we have consistently refused to extend Bivens to any new context or new category of defendants."). Thus, "[w]hat started out as a presumption in favor of implied rights of action has become a firm presumption against them." *Callahan v. Federal Bureau of Prisons*, 965 F.3d 520, 523 (6th Cir. 2020). The Supreme Court's directive has been clear that "expanding the *Bivens* remedy is now a disfavored judicial activity." *Ziglar*, 582 U.S. at 135.

The Court employs a two-step analysis to determine if *Bivens* provides a remedy for alleged misconduct by federal officials. *Id.* at 136. First, the Court must decide if the plaintiff's claim presents a "new context" or involves a "new category of defendants" that has not been recognized by the United States Supreme Court. *Hernandez*, 589 U.S. at 102. If the claim presents a new context, the Court must consider whether there are special factors that cause the Court to hesitate before recognizing a new implied cause of action. *Id.* Under this "exacting" two-part test, the answer to the question of whether a court "should engage in the disfavored judicial activity of recognizing a new *Bivens*

5

action…will almost always be never." *Elhady v. Unidentified CBP Agents*, 18 F.4th 880, 883 (6th Cir. 2021), *reh'g denied,* No. 20-1339, 2022 WL 326693 (6th Cir. Jan. 25, 2022).

Whether a claim is presented in a "new context" is to be interpreted broadly, as a context will be regarded "as 'new' if it is different in a meaningful way from previous *Bivens* cases decided by [the Supreme Court.]" *Ziglar*, 582 U.S. at 139-40. A difference is "meaningful" if, for example, it involves a different constitutional right, a different category of officers as defendants, a difference in the specificity of agency actions at issue, a difference in institutional expertise, or differing risks of judicial intrusion. *Id.*

While *Carlson* also involved alleged Eighth Amendment violations, Miller's claims differ from those in *Carlson* in significant ways. Unlike the plaintiff in *Carlson*, Miller does not allege that Hunt was deliberately indifferent to his serious medical needs. Instead, Miller indicates that Hunt used excessive force against him and discriminated against him based on his religion. These claims constitute new contexts under *Bivens*. *See Goldey v. Fields*, 606 U.S. 942 (2025) (concluding that prisoner's excessive force claim arose in a new context not previously recognized under *Bivens, Davis*, or *Carlson*); *Anderson v. Fuson*, No. 23-5342, 2024 WL 1697766, at *3 (6th Cir. Feb. 1, 2024) (same); *Iqbal*, 556 U.S. at 675 ("[W]e have declined to extend *Bivens* to a claim sounding in the First Amendment"); *Brown v. Brown*, 842 F. App'x 948, 949 (5th Cir. 2021) (prisoner's Fifth Amendment religious-discrimination claim presented a new context under *Bivens*).

Boyd's failure to assign Miller to a bottom bunk also differs meaningfully from the defendants' conduct in *Carlson*, where the plaintiff asserted

> that [defendants], being fully apprised of the gross inadequacy of medical facilities and staff at the Federal Correction Center in Terre Haute, Ind., and of the seriousness of [the decedent's] chronic asthmatic condition, nonetheless kept him in that facility against the advice of doctors, failed to

> give him competent medical attention for some eight hours after he had an asthmatic attack, administered contra-indicated drugs which made his attack more severe, attempted to use a respirator known to be inoperative which further impeded his breathing, and delayed for too long a time his transfer to an outside hospital. The complaint further alleges that [the decedent's] death resulted from these acts and omissions, that petitioners were deliberately indifferent to [the decedent's] serious medical needs, and that their indifference was in part attributable to racial prejudice.

*Carlson*, 446 U.S. at 16 n.1.

Unlike the plaintiff in *Carlson*, Miller does not allege that Boyd denied him treatment for a medical emergency. And while Miller's medical diagnoses (and injuries after his fall) were serious, they do not rise to the level of those at issue in *Carlson*. The Sixth Circuit has indicated that the degree of the plaintiff's injury matters, noting that an inmate's deliberate indifference allegations "differ[ed] markedly from a prisoner dying after an asthma attack where his asthma was not properly treated." *Anderson v. Fuson*, No. 23-5342, 2024 WL 1697766, at *3 (6th Cir. Feb. 1, 2024). *See also Matthews v. USP McCreary*, 6:24-cv-62-REW, 2026 WL 319191, at *5 (E.D. Ky. Feb. 4, 2026) ("As opposed to the fatal injury that occurred in *Carlson*, Matthews merely alleges that he suffered cuts, burning skin, hand and nerve injury, and a reduced ability to move his fingers as a result of correctional officers' use of force"); *Waltermeyer v. Hazelwood*, 136 F.4th 361, 366–67 (1st Cir. 2025) (deliberate indifference claims arose in a new context when the plaintiff had received some medical care and did not allege that officials failed to adequately treat a life-threatening condition or extreme pain); *Johnson v. Terry*, 119 F.4th 840, 859 (11th Cir. 2024) (observing that "[t]he severity, type, and treatment of Johnson's injuries were different from those of the plaintiff in *Carlson*," thus raising "a new context under the first-stage inquiry"); *but see Schwartz v. Miller*, 153 F.4th 918 (9th Cir. 2025) (concluding that the nature and severity of plaintiff's medical needs is "a difference in degree" and "is not

7

a meaningful difference giving rise to a new context"); *Watkins v. Mohan*, 144 F.4th 926, 934 (7th Cir. 2025) (plaintiff's claim that prison officials gave him constitutionally inadequate care after hernia surgery "fit squarely within the *Bivens* claim recognized by *Carlson*.").

Having concluded that Miller's claims against Hunt and Boyd arise in a new context, the Court must consider whether there are factors that weigh against recognizing an implied cause of action. This inquiry "must concentrate on whether the Judiciary is well suited, absent congressional action or instruction, to consider and weigh the costs and benefits of allowing a damages action to proceed." *Hernandez*, 582 U.S. at 553. "Put another way, the most important question is who should decide whether to provide for a damages remedy, Congress or the courts? If there is a rational reason to think that the answer is Congress—as it will be in most every case—no *Bivens* action may lie." *Egbert v. Boule*, 596 U.S. 482, 492 (2022). *See also Ziglar*, 582 U.S. at 135-36 ("When an issue involves a host of considerations that must be weighed and appraised, it should be committed to those who write the laws rather than those who interpret them.") (cleaned up).

Such factors clearly exist in this case. First, Congress has created a statutory cause of action against state actors who violated the constitution. *See* 42 U.S.C. § 1983. Instead of enacting an analogous statute for constitutional violations by federal actors, Congress passed the Prison Litigation Act of 1995, which created additional hurdles for prisoners bringing claims in federal court. *See Goldey*, 606 U.S. at 944 (noting that "Congress has actively legislated in the area of prisoner litigation but has not enacted a statutory cause of action for money damages").

8

Second, there are alternative means for prisoners to vindicate constitutional rights. For federal inmates, the BOP's inmate grievance program provides a ready and viable mechanism to challenge alleged misconduct by staff. See *Malesko*, 534 U.S. at 61 (noting that the BOP's inmate grievance program "provides yet another means through which allegedly unconstitutional actions and policies can be brought to the attention of the BOP and prevented from recurring."). This remedy is not considered less effective merely because it is created by regulation rather than by statute, see *Callahan*, 965 F.3d at 524, or because it does not provide the deterrence afforded by damages, see *Schweiker v. Chilicky*, 487 U.S. 412, 421-22 (1988) ("The absence of statutory relief for a constitutional violation ... does not by any means necessarily imply that courts should award money damages against the officers responsible for the violation."). Thus, courts have consistently held that the BOP's inmate grievance program provides a viable alternative remedy counseling against inferring a remedy under *Bivens*. *Callahan*, 965 F.3d at 524; *Freedland v. Mattingly*, No. 1:20-CV-81, 2021 WL 1017253, at *8 (M.D. Pa. Mar. 17, 2021) (collecting cases).

Finally, the context of Miller's claims is significant, since "[p]rison-based claims also present a risk of interference with prison administration." *Callahan*, 965 F.3d at 524. As the Sixth Circuit recognized in *Callahan*, "[r]unning a prison is an inordinately difficult undertaking that requires expertise, planning, and the commitment of resources," all tasks that fall "peculiarly within the province of the legislative and executive branches." *Id*. (quoting *Turner v. Safley*, 482 U.S. 78, 84-85 (1987)). Thus, "[g]iven the array of challenges facing prison administration and the complexity of those problems, 'separation of powers concerns counsel a policy of judicial restraint,' – counsel in favor in other words

9

of the judiciary not creating new causes of action in this area." *Id*. (quoting *Turner*, 482 U.S. at 85).

The Supreme Court has instructed that, "[i]f there is even a single 'reason to pause before applying *Bivens* in a new context,' a court may not recognize a *Bivens* remedy." *Egbert*, 142 S. Ct. at 1803 (quoting *Hernandez*, 140 S. Ct. at 743). Thus, because multiple factors counsel strongly against implying a *Bivens* remedy for Miller's Eighth Amendment claims, the Court will not do so here.

> **B.  The United States' motion to dismiss Miller's FTCA claim will be granted, in part, and denied, in part.**

Sovereign immunity generally shields the federal government and its agencies from suit. *FDIC v. Meyer*, 510 U.S. 471 (1994). However, the FTCA waives the United States' sovereign immunity for certain torts committed by federal employees when acting within the scope of their employment. *Id.* An actionable FTCA claim must be (1) against the United States; (2) for money damages; (3) for injury or loss of property, or personal injury or death; (4) caused by the negligent or wrongful act or omission of a government employee; (5) while acting within the scope of the office or employment; and (6) under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the state where the act occurred. *See* 28 U.S.C. § 1346(b)(1); *Brownback v. King*, 592 U.S. 209, 212 (2021). FTCA claims are unique because the factual elements required to establish a claim are also jurisdictional. *See Brownback*, 592 U.S. at 212. Accordingly, a plaintiff's failure to plausibly allege all six elements results in a failure to properly allege subject matter jurisdiction. *Id.*

Miller does not object to the government's characterization of his FTCA claim as challenging (1) Boyd's decision to deny a lower bunk; and (2) Hunt's alleged use of

10

excessive force.  (*See* Docs. # 21, 29 at 6).  The government brings a factual challenge to jurisdiction with respect to Miller's lower-bunk claim, arguing that the claim is barred by the discretionary function exception to the FTCA.  The discretionary function exception applies, and a plaintiff may not sue under the FTCA, if two things are true.  First, the governmental action must involve an element of choice.  *United States v. Gaubert*, 499 U.S. 315, 322 (1991); *Bultema v. United States*, 359 F.3d 379, 383 (6th Cir. 2004).  Choice or discretion is necessarily involved unless "a federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow, because the employee had no rightful option but to adhere to the directive."  *Milligan v. United States*, 670 F.3d 686, 693 (6th Cir. 2012).

Second, the governmental action at issue must be of the kind susceptible to analysis as a matter of social, economic, or political policy.  *United States v. Gaubert*, 499 U.S. 315, 322-23 (1991).  In other words, the plaintiff's claim must not effectively require the Court to "second guess the political, social, and economic judgments of an agency exercising its regulatory function."  *United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines)*, 467 U.S. 797, 814 (1984).  Thus, to avoid dismissal, the FTCA plaintiff "must allege facts which would support a finding that the challenged actions are not the kind of conduct that can be said to be grounded in the policy of the regulatory regime."  *Montez ex rel. Estate of Hearlson v. United States*, 359 F.3d 392, 397 (6th Cir. 2004).

Inmate bunk assignments involve an element of choice.  While Miller alleges that BOP policy *requires* bottom bunk assignments for prisoners who take blood thinners, he has not identified any authority supporting that position.  Both Miller and the United States

11

tendered a BOP Memorandum for Clinical Directors/Health Services Administrators that includes guidance on lower bunk passes. (Docs. # 21-1 at 3-4; 29-1). While the guidance indicates that inmates on blood thinner should be *considered* for lower bunk passes, the document indicates that no condition automatically qualifies an inmate for a lower bunk pass. *Id.* at 4. *See also Harper v. United States,* No. 5:08-403, 2009 WL 3190377, at *4 (E.D. Ky. Sept. 30, 2009) ("cell assignments are made in the reasoned discretion of the Unit Team"); *Paulino-Duarte v. United States*, No. 2-9499, 2003 WL 22533401, at *2 (S.D.N.Y. Nov. 7, 2003) ("deciding which inmates get which bunks is clearly discretionary"); *Arias v. White*, No. 21-CV-1050, 2022 WL 2682019 (W.D. La. June 23, 2022) (*report and recommendation adopted*, No. 21-CV-01050, 2022 WL 2679609 (W.D. La. July 11, 2022) (observing that "even assuming criteria or policies exist regarding cell assignment, they would not render BOP's decision nondiscretionary").

The BOP's decisions regarding inmate housing assignments "necessarily implicate the balancing of competing policy considerations, such as the inmate's personal safety and medical needs, the facility's available resources, the safety and medical needs of other prisoners, the security and medical staff, and the public." *Harper*, 2009 WL 3190377, at *4. *See also Bultema v. United States,* 359 F.3d 379, 384 (6th Cir. 2004) (bunk pass and decisions "involve the type of across-the board policy-making judgment that the discretionary function exception was meant to leave to federal administrators, in this case prison administrators"); *Santana-Rosa v. United States*, 335 F.3d 39, 44 (1st Cir. 2003) (concluding that decisions regarding inmate classification fall within the discretionary function exception); *Paulino-Duarte v. United States*, 2003 WL 22533401 (S.D.N.Y. 2003) (discretionary function exception barred an inmate's FTCA

12

claim regarding BOP's failure to put guardrails on top bunk or assign him a lower bunk); Paseur v. United States, No. 120CV01189AMMSGC, 2021 WL 4434971, at *5 (N.D. Ala. Aug. 10, 2021) ("[The] BOP's policy for lower bunk assignments is discretionary . . . .") (citing Edwards v. United States, 660 F. App'x 799, 802 (11th Cir. 2016)).  Thus, the Court concludes that Miller's lower-bunk claim falls within the discretionary function exception under 28 U.S.C. § 2680.  As a result, this claim will be dismissed for lack of subject matter jurisdiction.

Finally, the Court turns to Miller's FTCA claim involving Defendant Hunt.  Miller alleges that Hunt grabbed him, pushed him against a wall, dragged him down the hall, and spat in his face.  (Doc. # 5 at 4-5).  While intentional torts are generally excepted from the FTCA's waiver of sovereign immunity, the United States may be held liable for certain intentional torts, including assault and battery, that are based on the acts or omissions of investigative or law enforcement officers.  *Millbrook v. United States*, 569 U.S. 50, 52-53 (2013).  Notwithstanding this "law enforcement proviso," the United States brings a facial attack on subject matter jurisdiction, arguing that  Miller's FTCA claim fails because Hunt's alleged conduct necessarily fell outside the scope of his employment.[1]

"Whether an employee was acting within the scope of his employment is question of law, not fact, made in accordance with the law of the state where the conduct occurred."   *Landham v. Taylor*, 68 F. App'x 608, 610 (6th Cir. 2003).  Under Kentucky law,  "[a]n employee acts within the scope of employment when performing work assigned

---

[1] It is unclear from the record whether Miller exhausted his administrative remedies with respect to the FTCA claim concerning Hunt.  See Doc. # 5-1 at 28 (denying Miller's FTCA claim challenging his bunk assignment and adequacy of medical care). However, exhaustion is not a jurisdictional prerequisite and the United States did not raise failure-to-exhaust in its motion to dismiss.  See *Kellom v. Quinn*, 86 F.4th 288 (6th Cir. 2023) (noting that the FTCA's exhaustion requirement is a mandatory claims processing rule—not a jurisdictional requirement).

13

by the employer or engaging in a course of conduct subject to the employer's control." *Papa John's Int'l, Inc. v. McCoy*, 244 S.W.3d 44, 51–52 (Ky. 2008). In cases of intentional torts, the "focus is consistently on the purpose or motive of the employee in determining whether he or she was acting within the scope of employment." *Id.* at 51 (citing *Patterson v. Blair*, 172 S.W.3d 361, 369 (Ky. 2005)).

In *Papa John's*, the Kentucky Supreme Court provided a handful of illustrative, contrasting examples involving intentional torts from its precedents. *Id.* In one case, a bus driver stopped his bus in the middle of the street to assault another driver in a road rage incident. The driver was not acting within his scope of employment because his motive was to settle a personal score, not further his employer's business. *Wood v. Southeastern Greyhound Lines*, 194 S.W.2d 81, 82-84 (Ky. 1946). In another case, a grocery store clerk shot and killed a person during what he thought was a robbery. Even though that action flatly contradicted store policy, the clerk was acting within the scope of his employment because his purpose was to protect the store premises. *Frederick v. Collins*, 378 S.W.2d 617, 618-20 (Ky. 1964). In yet another case, in an effort to repossess a vehicle an employee for an automobile dealership stopped the car at a stoplight, ordered its driver to get out, and shot the car's tires out when the driver would not comply. The employee was held to be acting within the scope of the dealership's employment because his efforts were intended to serve its business. *Patterson v. Blair*, 172 S.W.3d at 363.

Kentucky law makes clear that even if the employee's actions are wholly misguided, they are done within the scope of employment if motivated by a desire to further the employer's business. *Laible*, 91 F.4th at 445. The government contends that Hunt could not have acted within the scope of his employment because Hunt's conduct

14

allegedly was motivated by his personal feelings about Miller's religion. But while Miller indicates that Hunt *previously* targeted him because Hunt believed Miller to be a "culturally confused . . . white boy with dreadlocks," the complaint alleges that Hunt used force against Miller, at least in part, because Miller refused to make his bed. *See* Doc. # 5 at 4-5.

Unlike some other intentional torts, "the physical conduct involved when a prison security guard attempts to bring a non-compliant inmate under control is more likely to be 'of the same general nature as that authorized or incidental to the conduct authorized.'" *Greene v. United States*, No. 6:22-120-WOB, 2023 WL 309320, at *3 (E.D. Ky. Jan. 18, 2023) (quoting *Osborne v. Payne*, 31 S.W.3d 911, 915 (Ky. 2000)). Because Miller has alleged that Hunt's conduct was motivated, at least in part, by Hunt's desire to gain Miller's compliance, the United States' motion to dismiss this portion of Miller's FTCA claim will be denied. *See Foster v. United States*, 6:23-cv-179-CHB, 2024 WL 3445482, at *3 (E.D. Ky. July 17, 2024) (denying United States' motion to dismiss FTCA claim because "at this early stage in the litigation, it is difficult to discern the prison employees' precise purpose or motive for engaging in the alleged conduct").

**IV.**

Based on the foregoing, it is **ORDERED** as follows:

1. Hunt and Boyd's motion to dismiss (Doc. # 20) is **GRANTED**. Hunt and Boyd shall be terminated as parties to this action.

2. The United States' motion to dismiss (Doc. # 21) is **GRANTED, in part, and DENIED, in part**. While Miller's FTCA claim based on Boyd's alleged conduct

15

is dismissed, Miller's FTCA claim based on Hunt's alleged conduct remains pending.

3. The United States must respond to Miller's remaining FTCA claim in accordance with Rule 12(a)(4)(A) of the Federal Rules of Civil Procedure.

4. Pursuant to 28 U.S.C. § 636(b) and standing orders of this Court, this matter is **REFERRED** to a United States Magistrate Judge to conduct all further pretrial proceedings, including overseeing discovery and preparing proposed findings of fact and recommendations on any future dispositive motions.

This 5th day of March, 2026.

Signed By:
David L. Bunning
Chief United States District Judge

G:\Judge-DLB\DATA\ORDERS\PSO Orders\Miller 0-24-55 DE 20 and 21.docx